FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
10:01 am, Nov 03, 2025
JEFFREY P. COLWELL, CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.:

MATTHEW ALVORD,

   *Plaintiff*,

v.

RELIANCE STANDARD LIFE INSURANCE COMPANY; and
MATRIX ABSENCE MANAGEMENT, INC.

   *Defendants*.

---

## COMPLAINT

---

Plaintiff, Matthew Alvord ("Mr. Alvord"), appearing pro se, files this Complaint against Defendants Reliance Standard Life Insurance Company ("Reliance") and Matrix Absence Management, Inc. ("Matrix"), and respectfully states, alleges, and avers as follows:

### PARTIES, JURISDICTION, AND VENUE

1. This action is brought under 29 U.S.C. §§ 1132(a), (e), (f) and (g) of the Employee Retirement Income Security Act of 1974 ("ERISA") as it involves claims by Plaintiff for employee benefits under employee benefit plans regulated and governed under ERISA. Jurisdiction based on a federal question is predicated under these code sections and 28 U.S.C. § 1331. This action is brought to recover benefits under the terms of employee benefit plans, and to enforce Plaintiff's rights under the terms of employee benefit plan. Plaintiff seeks relief, including but not limited to, payment of benefits, pre-judgment and post-judgment interest, and attorneys' fees and costs.

2. Plaintiff Matthew Alvord ("Plaintiff" or "Mr. Alvord"), at all times pertinent hereto, was and is a resident and domiciliary of the State of Colorado.

3. At all pertinent times Mr. Alvord was employed by ICF International, Inc. ("ICF") as a Principal Applications Developer.

1

4. Upon information and belief, ICF International, Inc. has a principal place of business and headquarters in the State of Virginia.

5. As an "employee" of ICF, Plaintiff was a "participant" in and "beneficiary" of the ICF Short Term and Long Term Disability Plans ("Plan" or "Plans"), as those terms are defined by 29 U.S.C. § 1002(6), (7), and (8).

6. ICF is the "administrator" and "plan sponsor" of the ICF Short Term and Long Term Disability Plans as those terms are defined by 29 U.S.C. § 1002(16)(A) and (B).

7. The Plans constitute "employee benefit plans" as defined by 29 U.S.C. § 1002(3).

8. The Plans identify Defendant Matrix Absence Management, Inc. ("Matrix") as the "claims administrator."

9. The Plan states:

> The Plan Administrator has assigned a Claims Administrator, Matrix, to provide certain administrative claims handling services. The Plan Administrator delegates to Matrix the discretionary authority to determine the validity of claims under the Plan. This delegation is subject to Plan Administrator's retention of full responsibility as a Plan Administrator for the final review of claims, and Plan Administrator has the discretionary authority to administer, construe and interpret the terms of the Plans and to make final, binding determinations concerning the availability of Plan benefits.

10. The Plans include short and long-term disability income replacement benefits insured by Short and Long-Term Disability Insurance Policy, issued by Defendant Reliance.

11. The Policy was "issued in" Colorado as that phrase is defined by Colo. Rev. Stat. § 10- 3-1116(8), because it provides disability coverage to Mr. Alvord, who was a resident of the State of Colorado at the time he became insured. Therefore, Colo. Rev. Stat. § 10-3-1116(8) applies to this claim and bans discretionary clauses.

12. As the insurer of the Policy, Reliance is responsible for making payments owed under the Policy.

13. Matrix is a sister company of Reliance.

14. Reliance is incorporated (or domiciled) in Illinois, and conducts business in the State of Colorado.

15. Matrix is a Delaware corporation and conducts business in the State of Colorado.

16. Venue is proper in this judicial district pursuant to 29 U.S.C. § 1132(e)(2).

## FIRST CLAIM FOR RELIEF
### Claim for Relief Under ERISA § 502(a)(1)(b) and 29 USC § 1132(a)(1)(b)

17. Plaintiff incorporates by reference all paragraphs of this Complaint as though fully set forth herein.

18. Under the STD Policy, if Mr. Alvord became Disabled while the Policy was in effect, Reliance would pay 60% of Mr. Alvord's weekly salary up to a maximum benefit of $2,000 per week, from the 8th calendar day through the 180th day of disability.

19. Under the LTD Policy, if after 180 days Mr. Alvord remains Disabled and exhausts his short-term disability benefit, Reliance would pay 60% of Mr. Alvord's monthly salary up to a maximum benefit of $15,000 per month.

20. The STD Policy defines "Disability" as follows:

> "Disability" means any physical or mental condition arising from a non-occupational illness, pregnancy or injury which renders a Participant incapable of performing the material duties of his or her regular job or any reasonably related job.

21. In November of 2021, Mr. Alvord suffered a debilitating injury following his first dose of the Pfizer COVID-19 vaccine. Cardiologist Dr. Kristin L. Thanavaro, MD FACC documented adverse side effects from the Pfizer vaccine, prescribed indomethacin to treat inflammation of the heart, and recommended that he not receive the second dose of the vaccine. In December, board-certified internist and academic hospitalist and member of The Chronic COVID Treatment Center, Dr. Eric Osgood, MD evaluated Mr. Alvord and analyzed his blood labs. "Symptoms include, heart palpitations, chest pain, SOB (Shortness of Breath), insomnia, fatigue, kidney pain, abdominal pain/cramps, brain fog, heartburn, elevated HR, and dysuria." Dr. Osgood

3

concluded, "According to the IncellKine report, long hauler index (LHI) was greater than 0.71, which does categorize the patient as a COVID-19 long hauler or long COVID."

22. Suffering worsening symptoms, Mr. Alvord was prohibited from continuing to perform the requirements of his job at ICF on a regular, full-time basis starting December 27, 2021. Mr. Alvord applied to his employer for short-term disability benefits.

23. Following patient evaluation and lab results, on 01/04/2021, Jessica Donahue, PA-C, primary care physician at the offices of Mile High Family Medicine certified Mr. Alvord's disability, completing the certification form provided by Matrix and diagnosing Post COVID Long-Haul.

24. By letter dated February 2, 2022, Matrix denied Mr. Alvord's claim for STD benefits, alleging "Insufficient medical documentation has been received to support lack of work function to determine disability."

25. By letter dated April 10th, 2022, Dr. Carson Maynard, DO at the Colorado Center for Arthritis and Osteoporosis wrote: "I see Matt at the Colorado Center for Arthritis and Osteoporosis. He has Undifferentiated Connective Tissue Disease. He has positive antibody tests including positive ANA, positive SSA, and neutropenia. His symptoms are severe and have been limiting his ability to do daily tasks and work. He has not been able to work since 12/2021 due to his symptoms."

26. On April 25th, 2022, Dr. Carson Maynard, DO, certified Mr. Alvord's disability, completing the certification form provided by Matrix with a diagnosis of Undifferentiated Connective Tissue Disease.

27. As of May 19th, 2022, Matrix had received two completed medical certification forms from separate treating physicians, documenting and detailing Mr. Alvord's disability.

28. By letter dated May 27, 2022, Matrix again denied Mr. Alvord's claim for STD benefits alleging "Insufficient medical documentation has been received to support lack of work function to determine disability."

4

29.     On July 29, 2022, in full compliance with 29 U.S.C. § 1133, Plaintiff (through legal counsel) submitted the mandatory internal appeal to Reliance providing a thorough history of his medical visits; lists and explanations of his symptoms and diagnoses; an explanation as to why he cannot perform his occupation on a full-time basis; letters from his doctors and objective laboratory tests and medical records, and personal testimony as well as the testimonies of his wife and close friend.

30.     By email sent to Plaintiff's legal counsel on August 12, 2025, Matrix refused to accept the STD appeal submitted by Plaintiff's legal counsel and stated that it required a written letter from Mr. Alvord in order to initiate the appeals process.

31.     By email sent to Matrix on August 12, 2025, Plaintiff's legal counsel responded, citing language in the Policy: "Any Participant or the representative of a Participant whose claim has been denied will have the right to request a review of the decision made on his or her claim."

32.     By letter sent to Plaintiff's legal counsel dated August 24, 2022, Matrix confirmed receipt of Plaintiff's appeal and stated "…you can expect a decision in appeal review no later than September 13, 2022 with a possible extension request."

33.     Pursuant to the ERISA regulations, the deadline to render an appeal decision was 45 days after the appeal was submitted on July 29th, setting the appeal decision deadline on September 12, 2022, unless special circumstances arose that prevented Reliance or Matrix from making a determination.

34.     On September 20, 2022, 8 days after the deadline had passed, Reliance sent a letter to Plaintiff's legal counsel, confirming receipt of the appeal on July 29th, but attempting to retroactively extend its deadline to render an appeal:

> We have received/reviewed your appeal request (received July 29, 2022). We also reviewed all of the medical and other documentation that is already contained within your client's claim. Based on our review of this information, we found we shall require a review of the evidence contained in your client's file by independent physicians, prior to the close of our review.

5

35. In its September 20, 2022 letter, Matrix stated it required more than 45 days to render a decision, but failed to identify a special circumstance necessitating the extension of time, and also failed to issue this notice before its deadline to do so. As such, Plaintiff, through legal counsel, properly objected to Reliance's ability to claim a 45-day extension.

36. By letter dated October 7, 2022, 25 days after the deadline to render a decision had passed, Matrix attempted to issue a denial of Mr. Alvord's appeal for STD benefits.

37. In its October 7 letter, Matrix placed more weight on the opinion of a single, non-treating medical consultant (Dr. Li) over the diagnoses from Mr. Alvord's 17 physicians.

38. According to his own records, Dr. Li started conducting his review on September 23, 11 days after the Defendants' deadline to render an appeal decision.

39. Mr. Alvord was cleared by his doctors to return to work on August 31, 2022.

40. Mr. Alvord's claim for disability benefits is from December 27, 2021, to August 31, 2022 (247 days).

41. As pertinent here, the Plan provides for LTD if, due to sickness or injury, the employee is disabled for longer than 180 days.

42. On October 26, 2022, Mr. Alvord applied for LTD benefits with the effective disability date of December 27, 2021.

43. By letter dated January 6, 2023, Reliance denied Mr. Alvord's claim for LTD benefits, stating: "...we have determined that you retain the ability to perform the material duties of your occupation."

44. In its January 6 denial letter, Reliance summarized Mr. Alvord's visits with Rheumatologist Dr. Maynard: "…Exam showed no tender or swollen joints and range of motion was normal." "You had no reported joint pain, swelling, or rashes." "...your range of motion continued to be normal." "Exam again showed no tender or swollen joints and range of motion remained normal."

6

45. While focusing on swollen joints and range of motion, which are irrelevant to both Mr. Alvord's disability and his job duties, Reliance ignored the diagnoses and symptoms that Dr. Maynard documented, treated, and prescribed medication for. The clinical diagnoses and Dr. Maynard's assessment of the severity of Mr. Alvord's symptoms, which were provided to Reliance, are absent.

46. In a letter dated June 29th, 2023, Dr. Carson Maynard detailed Mr. Alvord's condition and assessed him as being "totally disabled": "He was not able to perform his job due to shortness of breath, fatigue, insomnia, abdominal pain, heart palpitations, dysuria, dry eyes and dry mouth. He had significant symptoms as noted above and was totally disabled and completely unable to work and perform his job functions because of the symptoms as noted above. Please note these symptoms are not musculoskeletal in nature and did not have physical examination findings of joint pain or swelling as this was not part of his disease."

47. In rendering its decision, Reliance failed to address the numerous supporting lab results and medical diagnoses from the 16 other physicians that assessed and treated Mr. Alvord.

48. By letter dated February 15, 2023, Mr. Alvord requested a complete copy of his claim file from Reliance. "I am hereby requesting a complete copy of my claim file, including the Policy, all correspondence, all medical records, claim notes, physician consultant reports, surveillance reports/video and other documentation upon which the insurance company or claims administrator rendered its adverse claim decision."

49. On February 24, 2023, Justin Roy from Matrix printed Mr. Alvord's claim file. Absent from the claim file is any description or listing of Mr. Alvord's material job duties—which would be necessary in order to make any determination as to whether Mr. Alvord is still capable of performing those duties, or likewise, have non-treating medical consultants opine on Mr. Alvord's ability to perform the material duties of his occupation.

7

50. Correspondence with Mr. Alvord's legal counsel, including emails and letters regarding Reliance missing the deadline to render a decision, as well as Plaintiff's objection to the requested extension of time, is also absent from the claim file.

51. Mr. Alvord's role at ICF was Lead UX Designer on the ASSIST Program. Prior to his disability, in his 2021 Annual Performance Review conducted by his ICF manager John Weiss, he was evaluated with an overall rating of "4.5/5 – Often Surpasses Expectations". Pertinent here for describing Mr. Alvord's material job duties, John Weiss lists some of Mr. Alvord's core job functions and responsibilities, including engaging with customers and leading customer design sessions:

> Matt's engagement with the AAS PMO has been very successful and I personally feel he has quickly gained credibility and trust … with both his collaborative approach and his creative ideas.

> (Matt) took over role as lead UX designer on the program. Additionally, engaged with customers … to gather feedback and analyze areas of improvement, fix critical defects, and build prototypes for future enhancements.

> Matt has provided so much more value than I expected with 2021. He has contributed to 508 compliance, general defect fixes, took over the lead UX/UI designer position, and deftly navigated customer design sessions. I am very pleased with Matt's 2021 contribution.

52. In its January 6 denial letter, Reliance's stated rationale for determining that Mr. Alvord maintained the ability to perform the material job duties of his occupation cites his "normal range of motion" three separate times— a rationale that is incoherent given the actual material duties of his job included leading design sessions with customers and writing application code, as demonstrated above. The symptoms suffered by Mr. Alvord, which are documented by his treating physicians—including heart palpitations, chest pain, shortness of breath (dyspnea), insomnia, fatigue, brain fog, and kidney pain—made it impossible for him to perform the required duties of his job. The Defendants' denial rationale follows from the absence of a job description in Mr. Alvord's claim file, and demonstrates a failure to understand his material job duties and his symptoms in its cursory determinations and reflexive denials of Mr. Alvord's claim for disability benefits.

53. On June 30, 2023, Plaintiff submitted a second appeal for LTD benefits, providing extensive documentation and objective medical evidence which supports Mr. Alvord's claim for disability benefits.

54. By letter dated September 19, 2023, Reliance denied Mr. Alvord's appeal for LTD benefits.

55. While disabled, Plaintiff incurred significant legal costs in appealing Defendants' denials of his claim for disability benefits, and thus is filing this lawsuit pro se.

56. Defendants breached the terms of the Plan and Policy and violated ERISA. The STD appeal and exhibits, LTD appeal and exhibits, claim file provided to Plaintiff, medical evidence, and communications between Mr. Alvord's legal counsel and Defendants demonstrate the following:

   (a) Defendants reached multiple determinations that Mr. Alvord remained capable of performing his job duties without understanding his job duties.

   (b) Defendants attempted to reject Mr. Alvord's STD appeal because it was submitted by a legal representative, despite this being explicitly allowed in the policy.

   (c) Defendants missed its deadline to render a STD appeal decision, and then attempted to claim an extension without identifying a special circumstance to do so, and after the deadline had already passed.

   (d) Defendants changed the basis for denying benefits.

   (e) Defendants elevated the opinions of its non-treating record reviewers over those of Plaintiff's treating medical providers.

   (f) Defendants failed to perform a full and fair review of the evidence submitted in response to the appeal decision.

   (g) Defendants' determination is against the weight of medical evidence, including but not limited to the opinions and diagnoses of Plaintiff's physicians and/or healthcare providers, and laboratory test results.

9

(h) Defendants ignored Plaintiff's subjective symptoms even though they were observed or verified by others, including his treating medical providers.

(i) Defendants have unreasonably refused to pay LTD benefits to Plaintiff, despite additional documents and other evidence submitted by Plaintiff, subsequent to Defendant's denial of benefits.

57. Plaintiff has exhausted all Administrative Appeals provided by the Plan, and this action is timely filed.

58. Plaintiff has been damaged by Defendants' wrongful conduct, including that he has lost needed LTD benefits.

59. Defendants' adverse benefit determinations have compelled Mr. Alvord to institute litigation to recover benefits and coverage owed to him under the Policy.

60. As a direct and proximate result of Defendants' adverse benefit determinations, Plaintiff has been required to incur attorneys' costs and fees in pursuing this action for the LTD benefits owed under the respective Policy. Pursuant to 29 U.S.C. § 1132(g)(1), Plaintiff is entitled to have such fees and costs paid by Defendants.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays for relief against Defendants as follows:

1. Declare that Plaintiff is entitled to STD and LTD benefits under the Plan and Policy;

2. Order Defendant to pay all past-due STD and LTD benefits owed under the Plan and Policy from the date they became payable through the life of such benefits together with interest (both statutory and moratory) on each monthly payment from the date it became due;

3. Order Defendants to pay Plaintiff's costs of appealing its adverse benefit determinations, as well as this suit, including reasonable attorneys' fees under ERISA § 502(g);

4. Such other and further relief this Court deems just and proper.

Respectfully submitted this 3rd day of November 2025 by:

> Matthew Alvord
> Plaintiff, Pro Se
> 10361 W Exposition Dr
> Lakewood, CO 80226
> (720) 515-1309
> *alvord_graphics@yahoo.com*

12